UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d) FOR RELEASE OF SUBSCRIBER INFORMATION AND ACCOUNT RECORDS FOR EMAIL ADDRESSES ▇ ; ▇ ; ▇ ; ▇ AND ▇ | Docket no. 1:21-mc-30-AJ<br><br>**Filed Under Seal – Level II** |

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through John S. Davis, Assistant United States Attorney, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Google, LLC, an Internet service provider located in Mountain View, California, to disclose certain records and other information pertaining to the email accounts ▇ ("subject account 1"); ▇ (subject account 2"); ▇ ("subject account 3"); ▇ ("subject account 4"); and ▇ ("subject account 5"), as described in Part I of Attachment A. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

### LEGAL BACKGROUND

1. Google is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2).

Accordingly, the United States may use a court order issued under § 2703(d) to require Google to disclose the items described in Part II of Attachment A.  *See* 18 U.S.C. § 2703(c).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711.  *See* 18 U.S.C. § 2703(d).  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated.  *See* 18 U.S.C. § 2711(3)(A)(i).

3. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).  Accordingly, based on information provided to me by Special Agent Sara Albert of the Department of Defense, Defense Criminal Investigative Service, I hereby set forth the following specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

THE RELEVANT FACTS

4. The Defense Criminal Investigative Service, Boston Resident Agency, along with the Office of Export Enforcement, Boston Field Office, Homeland Security Investigations, Manchester, NH Resident Office, and the United States Attorney's Office for the District of New Hampshire have been investigating officers and employees of Sig Sauer, Inc. of Newington, New Hampshire, and ▮▮▮▮▮▮▮ of Singapore, and ▮▮▮▮▮▮▮ of Indonesia, along with related individuals and entities in Indonesia and Singapore, since late 2017.  The investigation has focused on the activities of Amaro Goncalves, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and

2

others regarding the sale of firearms and accessories to government end users in Indonesia.  The investigation has focused on possible violations of the Arms Export Control Act (22 U.S.C. § 2778), International Emergency Economic Powers Act (50 U.S.C. § 1705), wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1956), and the Travel Act (18 U.S.C. § 1952).

5. Sig Sauer, Inc., is a firearms and accessories manufacturer headquartered at 72 Pease Blvd, Newington, NH.  It is a foreign profit corporation registered in Delaware and a wholly owned subsidiary of Sig Sauer, US Holding LP, headquartered at 18 Industrial Drive, Exeter, NH.

6. Beginning in late 2015, Sig Sauer, Inc. of Newington, NH began to export products to Indonesia through a partner company calling itself ▮▮▮▮▮▮ of Singapore.  According to documents and testimony, Sig Sauer and ▮▮▮▮ have a "buy-resell" relationship wherein Sig Sauer sells their products to ▮▮▮▮ which in turn sells the products to a final user, marking up their sales to provide for a profit.  Between December 2015 and June of 2018, sales from Sig Sauer to ▮▮▮▮ totaled in excess of 27 million United States Dollars.

7. Sig Sauer, ▮▮▮▮▮▮▮▮▮▮▮▮ and related companies control the market in Indonesia for Sig Sauer's small arms, optics, and accessories, allowing ▮▮▮▮ to mark up its prices to the Indonesian government by as much as 600%.  In 2016 and 2017, ▮▮▮▮ and related companies appear to have paid over $700,000 in illegal kickbacks to Amaro Goncalves, Sig Sauer's Vice President for Global Defense Sales.  ▮▮▮▮ and Goncalves communicated repeatedly about the kickback payments in 2016 and 2017.  Also, members of the Sig Sauer Global Defense Sales team have taken actions to protect the monopoly held by their partner in Indonesia, and to obscure from Sig Sauer legal, compliance, and accounting staff the true identity of their representative in Indonesia.

3

8. The investigation has identified at least ████████████████ ████████████████████████████████████████ ████████████ of Indonesia as aliases/nominees for ████████ Also identified are ████████████████████████████████ ████████████████████████ and ████████████ as the Singaporean companies utilized as shell companies by ████████ These companies have listed as directors ████████████████████████████████ and others. The U.S. investigation has not uncovered any evidence showing that these individuals are involved in any of the actual business of ████████ beyond providing a Singaporean national as a figurehead.

9. On December 2019, ████████ arrived in the United States at the Los Angeles International Airport. ████ applied for admission as a non-immigrant B2 visitor for pleasure. Upon presenting himself for inspection, officials from U.S. Customs and Border Protection and Homeland Security Investigations encountered him and took from him a mobile device. This device was subsequently imaged by officers and agents. This phone was linked to the following Gmail e-mail addresses: "subject account 1", "subject account 2", and "subject account 3".

10. In a due diligence questionnaire provided by ████ to Sig Sauer, ████ listed himself as the ████ representative and listed an email address of "subject account 1".

11. Investigators have reviewed e-mail communications between ████ and Sig Sauer. On August 8, 2016, Sig Sauer's Executive Vice President of Global Defense Sales, Amaro Goncalves, sent ████ a letter signed by ████████████████ Global Defense Sales at Sig Sauer. This letter was sent via email to "subject account 1" and copied ████████ at "subject account 4". ██ was also Sig Sauer's point of contact for ████

4

12. Current and former employees of Sig Sauer who have interacted with ▓▓▓ told investigators that he has also used the alias ▓▓▓▓▓▓. In Goncalves' electronic contacts furnished by Sig Sauer, there is no contact for ▓▓▓ but two for ▓▓▓▓▓▓. An e-mail from Goncalves dated August 18, 2017, is addressed to "▓▓▓" but is sent to "▓▓" at ▓▓▓▓▓▓▓▓▓▓.

13. In 2021, Sig Sauer produced the e-mails of Goncalves that it possessed which relate to Indonesia. Contained in these messages was a copy of a letter to the Indonesian Police. It was sent to ▓▓▓ at ▓▓▓▓▓▓▓▓▓ and "subject account 1".

14. On a Non-Immigrant Visa application submitted by ▓▓, he listed his email address as: "subject account 5".

15. U.S. Visa records show seven different applications that list ▓▓▓▓ as the employer. All the Visa applications were filed between 2015 and 2017 for Indonesian applicants who were travelling to Sig Sauer. Many of them include the e-mail address "subject account 5".

16. Investigators have reviewed e-mail communications between ▓▓ and Sig Sauer. These communications revealed that ▓▓ also uses the following email address: "subject account 4".

17. An e-mail sent by ▓▓ from "subject account 4" to ▓▓▓ and Sig employees contains an attachment which demonstrates that ▓▓▓▓▓▓ increases the cost of Sig Sauer products by 450 to 600 percent for resale of Sig Sauer's products in Indonesia.

REQUEST FOR ORDER

18. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the

5

United States identify and locate the individual(s) who are utilizing the subject account, and to determine the nature and scope of their activities. Accordingly, the United States requests that Google be directed to produce all items described in Part II of Attachment A to the proposed Order.

                                    Respectfully submitted,

                                    JOHN J. FARLEY
Acting United States Attorney
District of New Hampshire

By:    /s/ John S. Davis
          John S. Davis
          Assistant U.S. Attorney

6